UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

RACKY SECK,                                                                                          Petitioner,

v.                                                                             Civil Action No. 4:26-cv-311-RGJ

SAMUEL OLSON, et al.,

                                                                                                 Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Racky Seck's Writ of Habeas Corpus. [DE 1].

Respondents responded on May 4, 2026. [DE 10]. Petitioner replied on May 5, 2026. [DE 12]. The

parties agree no evidentiary hearing is necessary. [DE 7; DE 8]. This matter is ripe for adjudication.

For the reasons below, this Court **GRANTS** the Petition for Writ of Habeas Corpus. [DE 1].

**I.       Background**

Petitioner Racky Seck ("Seck") is a 36-year-old native and citizen of Senegal. [DE 1 at 6-

7]. Seck has been present in the United States since August 2023. [*Id.*]. Seck entered the United

States without inspection. [*Id.*].[1] Although entering without inspection, Seck encountered border

patrol agents shortly thereafter near Lukeville, Arizona. [DE 10 at 75]. She was then issued a

Notice to Appear and released into the interior of the United States. [DE 1 at 6-7]. Seck has since

applied for asylum and work authorization. [*Id.*]. Her application for asylum remains, but her work

authorization has been granted through 2029. [*Id.*]. Seck has resided in Chicago, Illinois since her

release into the United States. [*Id.*]. Prior to her detention, Seck lived in Chicago with her U.S.

citizen boyfriend and were expecting a child, but unfortunately Seck suffered a miscarriage. [*Id.*].

Seck has been in detention since June 4, 2025. [*Id.*]. On June 4, 2025, Seck was attending

an immigration hearing pursuant to her Notice to Appear. [*Id.*]. At the hearing in open court,

---

[1] The United States concedes that Seck entered "without inspection." [DE 10-1 at 93].

Immigration and Customs Enforcement ("ICE") officials served Seck an I-200 Warrant for Arrest and detained her. Shortly thereafter, she was transferred to Grayson County Jail in the Western District of Kentucky where she has remained since. [*Id.*].

As stated, ICE had issued a Notice to Appear Form I-862. [DE 10-1 at 93]. The Notice to Appear marked Seck as an "alien present in the United States who has not been admitted or paroled." [*Id.*]. Seck is currently in full removal proceedings pursuant to 8 U.S.C. § 1229a. [DE 1 at 7].

ICE contends that based on interim guidance from DHS, issued July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission," only those noncitizens who have already been admitted into the United States are eligible to be released during removal proceedings and all other noncitizens are subject to mandatory detention, under 8 U.S.C. § 1225 ("Section 1225"), not Section 1226. [DE 1 at 11-12]. This is a reversal of longstanding policy. [*Id.*].

Seck asserts that the United States illegally detained her under Section 1225 instead of Section 1226 in violation of the INA. [*Id.* at 20-21]. And that this prolonged detention is in violation of her Due Process Rights under the Fifth Amendment. [*Id.*]. Therefore, Seck seeks release from her detention, or in the alternative, to hold a bond hearing before a neutral IJ to determine whether she should remain in custody. [*Id.*].

In response, the United States "rel[ies] on and incorporate[s] by reference the legal arguments from the briefs the government filed with the Sixth Circuit Court of Appeals in the four §§ 1225-1226 appeals." [DE 10 at 76-77]. Those cases are *Lopez-Campos v. Raycraft*, Case No. 25-1965 (6th Cir. Oct. 27, 2025); *Alvarez v. Noem,* Case No. 25-1969 (6th Cir. Oct. 27, 2025); *Contreras-Cervantes v. Raycraft*, Case No. 25-1978 (6th Cir. Oct. 28, 2025); *Pizarro Reyes v. Raycraft*, Case No. 25-1982 (6th Cir. Oct. 29, 2025). The United States concedes that the "relevant

facts in all four matters on appeal" are "similar to the relevant facts in this matter" and the only "legal question" is whether the Petitioner is detained under Section 1225(b)(2)(A) or Section 1226. [DE 10 at 77].

## II.    DISCUSSION[2]

### A.  Section 1225(b)(2) vs. Section 1226

While the relevant facts are undisputed by the parties, the United States argues Section 1225 applies to Seck's detention, not Section 1226. The United States acknowledges that the Court has previously ruled on the substantive question regarding § 1225 mandatory detention, [DE 10 at 74-76], and, that the only relevant legal question in this case is whether Seck is "detained under 8 U.S.C. § 1225 or § 1226[.]" [*Id.* at 76]. As such the Court incorporates by reference its reasoning in *Edahi v. Lewis*, 2025 WL 3466682, at *5-*13 (W.D. Ky. Nov. 27, 2025) and *Vicen v. Lewis,* 2026 WL 541171, *2–*9 (W.D. Ky. Feb. 26, 2026), holding that Section 1226 applies to the Petitioner based on the facts set forth above.

In finding that Section 1226 applies to the Petitioner, this Court is in agreement with the Second Circuit's recent unanimous opinion in *Cunha v. Freden,* --- F.4th --- 2026 WL 1146044 (2d Cir. Apr. 28, 2026), which discusses the identical Section 1225 vs. Section 1226 issue raised here. The Second Circuit held that the

> government's attempt to muddy these textually clear waters defies the statute's context, structure, history, and purpose; contradicts the Supreme Court's dicta in *Jennings* and longstanding Executive Branch practice; and its interpretation of the statute raises serious constitutional questions that should be avoided even if the statutory language were ambiguous.

---

[2] Neither party asserted any jurisdiction-related arguments. However, the Court has analyzed jurisdiction of remedies in similar circumstances, such as *Edahi*, 2025 WL 3466682, at *2-3 and incorporates its reasoning into this opinion. Neither party asserted any exhaustion-related arguments and no applicable statute or rule mandates exhaustion. However, because many decisions in similar cases by district courts within the Sixth Circuit discuss this principal, the Court incorporates its analysis on exhaustion of remedies from a previous case, *Edahi,* 2025 WL 3466682, at *3, and the Court waives the exhaustion requirement for the same reasons.

3

*Id.* at \*23.

> In sum, the plain meaning of "seeking admission" in Section 1225(b)(2)(A)—presently pursuing lawful entry into the United States—is not undermined by any of the other statutory provisions to which the government retreats to find support. Therefore, we find no basis to justify departing from the unambiguous meaning of the text, under which Petitioner is not subject to mandatory detention, because he is not "seeking admission" under Section 1225(b)(2)(A).

*Id.* at 13. In concurrence, Judge Cabranes stated that "[t]he words, properly defined, are clear. That ought to be the end of the matter." *Id.* at \*24 (Cabranes, J. concurring).

The Second Circuit noted that divided panels in two other circuits have agreed with the government, *see Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026), while the Seventh Circuit has preliminarily reached the same conclusion as the Second Circuit in reviewing a stay motion. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025). This Court recognizes the circuit split; however, for the reasons set forth in its prior orders and those in the Second Circuit's opinion, this Court agrees "with the decisions of over 370 district judges across the Nation who (as of mid-February 2026) have also rejected the government's position" (over ninety percent of district court judges). *Cunha,* 2026 WL 1146044 (citing American Immigration Council and American Immigration Lawyers Association *Amici* Br. at 5 n.6 (citing Kyle Cheney, *Even Trump's Own Appointees are Ruling Against ICE's Mass Detention Strategy*, POLITICO (Feb. 12, 2026) [https://tinyurl.com/yc7e5sbd])).

### i.  Related Case Law

The United States incorporated brief cites several nonbinding district courts, and one BIA decision, to support their interpretation.[3] However, the Court is not persuaded by these decisions

---

[3] None of the cases cited by the United States are controlling authority within the Sixth Circuit. Further, the BIA is neither binding, nor should be viewed as persuasive authority, on any district court. See *Loper Bright Enter.*, 603 U.S. at 413 ("courts. . . may not defer to an agency interpretation of the law simply because a statute is ambiguous") (emphasis added).

for the reasons previously explained in *Edahi*, 2025 WL 3466682, at *9–*13 and *Vicen* 2026 WL 541171, at *2–*9, incorporated here by reference.

* * *

For the reasons above and incorporated, Seck, who has been present in the United States for approximately three years, is not "seeking admission" into the United States, a fact acknowledged in her Notice for Appearance by not marking her as an "arriving alien." Section 1226, not Section 1225(b)(2), applies to her detention.

### B.  Lawfulness of Current Detention

As stated, Seck is detained under Section 1226. The United States contends that because Seck is properly detained under Section 1225(b)(2), not Section 1226, and she has not been deprived of any due process. [DE 10 at 90]. Otherwise, the United States does not respond to Seck's alleged violation of due process. Because the Court found that Seck's detention is guided by Section 1226, the Court must determine whether the continued detention pursuant to Section 1226 is in violation of her Due Process.

The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335. The United States does not address the merits of her Due Process claim, but instead focuses solely on the legal argument of Section 1225(b)(2) versus Section 1226 as referenced above.

5

### 1. Private Interest

It is undisputed Seck has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts can also consider the detainee's condition of confinement. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025). This is to determine whether the conditions are indistinguishable from criminal incarceration. *Id.* Seck is being detained at Grayson County Jail. [DE 1 at 7].

Seck previously lived in Chicago, Illinois. [*Id.*]. But because of her detention in a separate state, she is away and separated from her family, friends, and coworkers. [*Id.*]. This includes her U.S. citizen boyfriend, who she was expecting a child with up until her miscarriage. [*Id.*]. The detention is thus making it difficult for Seck to participate in her community, work, and care for others. [*Id.*]. As a result, the first *Matthews* factor favors Seck's position.

### 2. Risk of Error

The second factor concerns the risk of the erroneous deprivation of Seck's liberty. A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that "re-detention without any individualized assessment" establishes a "high risk of erroneous deprivation" of a protected liberty interest). As of today, Seck has not had a merits bond hearing, with counsel and evidence. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that Due process requires at a minimum the opportunity for the petitioner to submit evidence and be heard). Respondents have not demonstrated that Seck is a flight risk or a danger to the community, nor is it likely they can. Seck has no criminal convictions. [DE 1 at 6-7]. And notably, Seck was detained

at an immigration court proceeding. [*Id.*]. Therefore, it would appear to the Court the only material change within the past year, with respect to Seck, is the United States' interpretation of Section 1225 and Section 1226. Thus, because of a high, if not already evident, risk of erroneous deprivation of Seck's liberty interest, the second *Matthews* factor favors Seck.

### 3.   United States' Interest

The final *Matthews* factor concerns the United States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao*, 2025 WL 2607924, at *12. However, a "routine bond hearing" before an IJ presently "minimal" burdens to the United States." *Hyppolite v. Noem,* 2025 WL 2829511, at *15 (E.D. N.Y. Oct. 6, 2025). These procedures are also already in place. *Id.* Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025). Because of that, the Court finds that the third *Matthews* factor also favors Seck.

Therefore, the Court finds that all three *Matthews* factors favor Seck. The current detention of Seck is in violation of the Due Process Clause and the INA.

### III.   Remedy

Numerous courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Patel*, 2025 WL 2823607, at *6; *Beltran Barrera*, 2025 WL 2690565, at *7; *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention." *Thuraissigiam*, 591 U.S. at 107 (emphasis in original). This Court is releasing Seck because of the

"unlawful detention" by ICE and the United States for the reasons stated above. Seck is not being released because she is detained pursuant to Section 1226. But instead, the Court is ordering her release because of the United States' illegal actions *it undertook* in Seck's detention. *Hyppolite,* 2025 WL 2829511 *16 (holding that the United States cannot "detain [Petitioner] without first conducting a hearing before an IJ" because of the unlawful detention of Petitioner).

As a result of her release stemming from the "unlawful detention" in violation of her due process rights, and *further* pursuant to Section 1226 and its supporting regulations, Petitioner must be provided with a bond hearing on the merits before a neutral IJ before any re-detention. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). The IJ may consider the non-exhaustive list of factors set out in *Matter of Guerra* 24 I. & N. 37, 40 (BIA 2006). Courts across the country have routinely held this procedure proper. *Alonso*, 2025 WL 3083920, at *9; *Lopez-Campos,* F.Supp. 3d at 785-86; *Mboup v. Field Off. Director of N.J.*, 2025 WL 3062791, at *2 (D.N.J. Nov. 3, 2025); *Espinoza*, 2025 WL 2675785, at *11; *Ramirez Clavijo*, 2025 WL 2419263, at *6; *Munoz Materano*, 2025 WL 2630826, at *20.

Seck's procedural due process rights are not violated by the fact she is detained. "Rather, [Petitioner's rights] are violated because [s]he has been detained without a hearing that accords with due process." *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, *12 (W.D. Tex. Sep. 22, 2025) (citing to *Black v. Decker*, 103 F.4th 133, 149-150 (2d Cir. 2024)). Therefore, "the proper remedy" is the "full process due under [Section 1226] which includes a bond hearing before an [IJ]." *Maldanado,* 2025 WL 2968042, at *9-10; *Morales-Martinez v. Raycraft*, 2025 WL 3124695, at *7 (E.D. Mich. Nov. 7, 2025) (holding that because Petitioner had been detained "without a . . . hearing, he is in federal custody in violation of federal law.")

Because Seck is being detained pursuant to Section 1226, relevant regulations entitle her to a neutral bond hearing. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Therefore, to afford Seck with the

"full [due] process" under Section 1226, the United States must provide Seck with a neutral bond hearing before an IJ. *Maldanado,* 2025 WL 2968042, at *9-10.

### VI.    Conclusion

For the reasons stated above, the United States has violated Seck's due process rights. The Court **GRANTS** Seck's Petition for Writ of Habeas Corpus [DE 1] and orders the following:

I.    The United States is directed to release Petitioner Seck immediately because of the unlawful detention in violation of her due process rights.

II.    The United States must provide her with a bond hearing before a neutral IJ pursuant to Section 1226.

III.    The United States must certify compliance with the Court's order by a filing on the docket **by May 7, 2026.**

Rebecca Grady Jennings, District Judge
United States District Court

May 6, 2026

9